Our last case today, No. 251063, North End Chamber of Commerce, Inc., et al. v. City of Boston. Will Counsel for Appellants please come up and introduce yourself on the record to begin? Good afternoon, Your Honors, and may it please the Court, Kieran Altieri for the North End Chamber of Commerce and the 20 North End restaurants who are Plaintiff's Appellants in the matter. I'd like to begin by just a few minutes on plausibility and some of the leading allegations. jump to one aspect of the unlawful tax issue, touch on Rule 8, and anything else that Your Honors want to discuss. If they sue, can we just say, fine, we are shutting down the North End program? This complaint alleges that the City of Boston proposed in writing, shutting down an economically vital government program in direct response to a potential lawsuit. Where do you bring up in the complaint, where is there a First Amendment retaliation claim? It's part of the Equal Protection Selective Enforcement Claim. Where is it? It's Count 2. Excuse me, it's Count 2. Count 2 is a First Amendment claim? No, there is no per se First Amendment claim. This is a claim that the City of Boston selectively enforced against the North End restaurants and that as part of this selective enforcement, they retaliated for the exercise of a constitutional right in the filing of a lawsuit. Do you have to show selectivity for this claim to win? Sure. Sure.  So then until we have some reason to think that there was a singling out, the retaliation piece of it doesn't matter, right? Well, there was certainly a singling out. Okay, but the district court disagreed with you, as do your opponents, so maybe you need to explain why there was such a singling out, because I'm not understanding how the retaliation matters absent evidence, absent showing that there was a singling out. The singling out was the government program being shut down, the outdoor dining program being shut down in the North End only. Everywhere else in the city it proceeded. It was shut down in the North End only. I'm just not sure I'm tracking. The North End also was subject to the higher fee, correct? In 2022. So in 2022, you have so different claims as to different years, and that's one of the complications of this case, to be candid. So in 2022, you have the North End, who is the only place in Boston who has fees of $7,500 per restaurant. This is an impact fee, actually, that was called different things. This is 2022. So the claim as to 20, the multiple claims as to 2022 are the selective enforcement retaliation does not apply to 2022. 2023, the ban is a selective enforcement retaliation-based claim, excuse me. 2024 is a selective enforcement retaliation-based claim. So just so my following, is the import of this statement then to show that the criterion that was used to select was the possibility they would sue? Precisely. That this statement, especially when viewed in the context of the other allegations of the complaint, and this is very important, this statement cannot be viewed in this case, this Court's cases are very clear that you should not look at allegations in a vacuum or piecemeal, that they should be viewed as a whole, the complaint should be viewed as a whole. The Ocasio-Hernandez case is very clear on that. And so the if-they-sue statement, March 20th, 2022, this is a Sunday night. March 20th, 2022?  So what happens here is there is a... What is the claim that this is relating to, just so I can track it? This is relating to the claim that there was an equal protection violation in shutting it down in when? Later that year as to 2023. So the chronology is very important. So if I could, Your Honor, just proceed through a few of the aspects of the chronology, which was my intention. March 20th, 2022, Sunday night, after, and the complaint alleges this very clearly, there is controversy raised about the proposal of charging the North End restaurants in 2022 $7,500 as a participation fee. That's Sunday night, March 20th, 2022. The very next day is the statement alleged in the complaint at the St. Patrick's Day breakfast. I'm getting used to dealing with problems that are expensive, disruptive, and white. Four days later, March 25th, 2022, the letter, which is Exhibit 4 to the complaint, where the mayor of the city of Boston says, if you... I'm paraphrasing. I shouldn't paraphrase. Let me quote the letter. So... If a critical mass of restaurant owners also believe the program is unworkable as proposed, then I am prepared to rescind North End outdoor dining before the start of the season. As I see I'm halfway through 10 minutes. So if I could just give some context. I just think I'm not tracking what you're trying to have us understand. It's an equal protection claim, correct? Equal protection. Correct. So that's classical. Multiple claims. Equal protection is one of them. And right now, you're talking to us about equal protection. Yes. The if they sue comment statement is very relevant to the equal protection retaliation. Okay. And the equal protection claim is rational basis review? No. I do not know. Because you have the plus factor of retaliation-based. Retaliation-based. There is... It is very... In many cases, it is stated clearly that you cannot have... There is no rational basis justification for retaliation-based government conduct. It's not a First Amendment claim. It is not a First Amendment claim. It is a claim that you cannot... What is the case you're relying on that... Several cases, and they're all cited at footnote three of our brief. So if you take the several cases, including cases from this circuit. So footnote three, the Powell v. Alexander case. Our constitutional system gives every right... Every citizen the right to redress in the courts without fear that recourse to the law will make that citizen a target for retaliation. An act from the Seventh Circuit, an act taken in retaliation for the exercise of a constitutionally protected right is actionable under 18th... 19th... So the constitutional right would be the First Amendment right to petition? It... Yes. To petition the government for redress of grievances. That's... Did you bring that claim? Is that the claim that was brought? It is not a First Amendment claim per se. It is a claim that the government conduct at issue as to the 2023 and 2024 bans were based on retaliation for the exercise of the right to sue. Could you... Could you direct again? You say this was count one of the complaint. Where is count one? Normally that's not a question I have to ask, but when I have a 200-page complaint, I can't even find... Where is count one in it? Where does count one begin? Yes. There is a table of contents in the complaint. Count one begins on 125, the count as a qua count. Obviously there are many facts of the complaint. 125 pages into the complaint to find the first count? That's correct. That's where the count begins. Your Honor has turned to the Rule 8 issues, it seems, and I just wanted to say a few things. There are six counts on the Rule 8 issues, six counts, 20 plaintiffs, multiple claims involving the city of Boston and a controversial government program, very strenuous standard on count two, which is the selective enforcement count, excuse me, which is the class of one equal protection count, and this Court's decisions have required stringent expression of the similarly situated portion of that count. If you read the District Court's opinion, there is almost no discussion of the similar situation issue. The Court essentially decided that the North End was different because there was an allegation that it was the most restaurant-dense neighborhood. The Court did not touch 50 pages of overlay of restaurants in the North End versus restaurants in the other areas of the city. Because I have so little time, I just want to touch on the unlawful tax issue. Are you aware of any case where we have reversed the District Court Rule 8A finding? Where you have reversed a Rule 8, not offhand, where there has been a reverser. I can tell you that all of the cases that I have seen on Rule 8 where there is a finding that the rule is violated have involved a finding that there is a lack of clarity about the complaint. There was no such finding in the District Court's order. The District Court essentially adopted that this is just too long a rule with no finding that there was confusion, no finding that the City of Boston had difficulty in understanding the nature of the claims against them, which is the very purpose of Rule 8. So you will put on notice that the other side thought this was an 8A violation. In the context of briefing the motion to dismiss, and that is all correct. But that continued for about six or seven months as I look at the document. Correct. For a very important reason, the 2024 ban happened after the complaint was originally filed. And you filed one or two amended pleadings. So there are two amendments. And each one, how many pages long? The first complaint, I can't tell you off the top of my head, was a bit shorter. The main change between the first and the second, and the third complaint is really just a formatting change. And if you look at the docket, it's very clear. There's just a table of contents that's added and some formatting changes. The major fundamental change in the first to the second complaint is the addition of the 2024 claims, which, like the if they sue statement, is not touched in the judge's order. The judge did not rule on the 2024 claims at all. I'd just like to touch briefly on the unlawful tax issue. The unlawful tax issue asserts that the fees that were charged in 2022 did not go. They were not particular to the North End payers. These North End restaurants had to pay $7,500 plus a parking spot fee. And the money, the complaint alleges, did not go to provide services for the North End. Instead, that money, $7,500 per restaurant, went to purchase a $520,000 fully electric street sweeper that nowhere was disclosed to the fee payers, nowhere it was disclosed to the city, and it wasn't just sent around the country. That's a State law claim. That is a State law unlawful tax claim. The only jurisdictional basis for the court considering it was supplemental jurisdiction. Agreed, Your Honor. That is correct. If your other, what is it, five claims fail, then what do we do with the State law claim? I think that the court, you're right that the only jurisdiction for the purely Massachusetts unlawful tax claim is supplemental. We of course think that the other claims have merit. There is, however, a claim as to the 2020 fees that it is, that this exercise of this taking of $7,500, I didn't get to the final point, which is very relevant to your question, Your Honor. It was spent on a $520,000 fully electric street sweeper that was not limited to the North End. This street sweeper, the complaint alleges, was set around the entire city of Boston. That is inconsistent with the rule that the fee has to be particularized to the fee payers. Wasn't it used in the North End? It was used in the North End in part for a period of, and this is critical, from July of 2022 when it enters the city's fleet until the North End outdoor dining program was completely ceased September 30th, 2022, so a period of less than eight weeks. And then the complaint alleges that same street sweeper was sent around the city for a period of two years, a $520,000 piece of equipment that was not disclosed as part of the fee basis. The city, and when the complaint further alleges on this point, that when this street sweeper fully electric, half a million. What difference does it make that it's fully electric? Because it goes to the point that it was unnecessary and it had nothing to do with the North End outdoor dining program, which is a fundamental component of the unlawful tax law. Fully electric made it unnecessary? Yeah, there was a fleet of, and the complaint alleges this, yes, Your Honor, the complaint alleges there was a sufficient fleet of street sweepers servicing the North End. This had nothing to do with the outdoor dining program. And when it was announced by the city in February of 2023, it was not attributed to the North End outdoor dining program, yet the entire thing was expensed to the North End outdoor dining program. So how would that be any different if it weren't fully electric? I suppose if there were such thing as a half million dollar non-fully electric street sweeper, it may not be different. The fact is, it's an extraordinary expense, which had no connection. And this goes to the substantive due process issue, frankly, because this is a half million dollars taken from North End restaurants and couched as a fee that then went to service not the North End restaurants. Just to see my time is up, I've got a few other comments on the Rule 8 issue. Your time is up. Thank you, Your Honors. Thank you, Counsel. Will attorneys for Appley please come up and introduce yourself on the record to begin? Good afternoon, Your Honors. May it please the Court. My name is Samantha Fuchs, and I represent the defendant Appley, the City of Boston. I'm joined at counsel table by attorneys Sam Denning and Randall Moss. Your Honors, the City cannot be compelled to give up its public streets for private profit. The District Court in this case correctly determined that the restaurants put forth no cognizable constitutional claim regarding the City's outdoor dining program in the North End of Boston, one of its most unique neighborhoods. How do you understand the retaliation claim? What is that in your view? I agree with Your Honors that there is no First Amendment retaliation claim made out in the complaint. I think that in terms of whether or not there's some sort of malice, bad faith, or some sort of intent to punish constitutional rights, that's ultimately what the restaurants are attempting to say. However, it's very clear on the record there is no malice in this case, and they did not plausibly plead any bad facts. If there's not a First Amendment complaint, what is the malice claim? Is it a substantive due process claim, then? No, Your Honor. I think it would be under some sort of selective enforcement claim. However, to Your Honor's point But what would be the – how would the selective enforcement claim work, I'm not following that, if it's not a First Amendment challenge? I think that's exactly right, Your Honor, that ultimately what selective enforcement requires is that there's some sort of different treatment that is different from others who are similarly situated, and that that different treatment was based on some sort of impermissible consideration like malice, bad faith, or an intent to punish constitutional rights. In this case, they have not pleaded anything in terms of being able to demonstrate, one, that they were similarly situated, two, that there was any type of different treatment, or that the City of Boston ultimately enacted some sort of policy that was neighborhood-wide, affecting 95 restaurants, that ultimately was because of some sort of malice or bad faith here. So ultimately, I think this Court is absolutely correct in that there is really no selective enforcement claim here. Moreover, Your Honor. But as to the element of attempting to exercise fundamental constitutional rights, if there had been retaliation and it was motivated by some sort of malice and there was an adequate comparator, they'd have a claim. So it's that one element you're not challenging. Correct, Your Honor. If there would have been a claim if there was some sort of first similarly situated, there had been different treatment, and then ultimately that different treatment was based on some sort of impermissible consideration. None of those things are present here. First, regarding different treatment, there absolutely is nothing on this record that would support that the city, again, enacted or implemented a neighborhood-wide policy in the north end of Boston that affected over 95 restaurants, ultimately, again, based on some sort of impermissible consideration like malice, bad faith, or some sort of intent to punish constitutional rights. So they say what? That the other neighborhoods are, because they're neighborhoods, they're adequate comparators? Actually, Your Honor, they don't even say that. What they say is that the proper comparator is ultimately restaurant to restaurant. But that comparison point doesn't make sense, and the district court actually addressed this in full in its decision. Ultimately, the neighborhood is the correct comparator, because that's the touchstone of the government action in this case. The challenge of government action is, why did you treat the north end differently? And the city had ample reason to do so. In fact, it's interesting that the district court actually also addressed this in fully, noting that the north end has different parking scarcity, restaurant density, heavy traffic, construction projects, and population, ultimately, than other neighborhoods, and that the restaurants here did not plead that any other neighborhood has those similar comparison points. They are actually saying it should be a restaurant to restaurant comparison, which ultimately doesn't make sense. On the malice point, what do you say about that? If the statement is, if they sue, we'll shut the program down. Well, first, I agree with opposing counsel that the record needs to be read in full to determine whether or not there is some sort of malice on the record before this court. And absolutely, there is no malice. There is no bad faith, nor is there any intent to punish or inhibit the exercise of constitutional rights. That statement, and I believe my brother counsel said that the chronology is important here, and it absolutely is. That statement was made in March 2022. On May 1st, 2022, that's when the north and outdoor dining season started for that summer. On May 9th, 2022, four plaintiffs filed suit in that initial lawsuit. And what the restaurants did not say in their briefing is that for the remainder of that 2022 outdoor dining season, there was a full and robust outdoor dining program. One where restaurants that qualified received hardship waivers for the city, where the city prorated the fee for other restaurants where essentially- So none of that is included in the complaint? That is all included in the complaint, Your Honor. It's more that it wasn't touched upon in the briefs. They immediately jumped to the 2023 outdoor dining season, where there was a restriction on on-street outdoor dining, while still allowing it on other public property. And I believe on page 898 of the record, it reflects ultimately that there was outdoor dining on other public property, just not on street, as well as the permanent sidewalk program, which existed prior to this temporary outdoor dining program. I'm still trying to grapple with the import of this statement. Suppose we thought the statement, if they sue, we can shut down. Suppose it had been even stronger and it was, we'll shut them down if they sue. Okay? If that's not pled as a First Amendment claim, what is the significance of the statement being there for the equal protection claim? I just am not grasping what that is. I mean, okay, yes, they said that, and that's then why they did it. Why is that unconstitutional if you're not saying it interfered with a constitutional right? And I think that's exactly right, Your Honor, which is ultimately there was no sort of retaliation in this case. First of all, it wasn't pled. Second of all, if you actually look at the record, there isn't any retaliation claim, even if that statement was stronger. And when you say retaliation claim, you mean retaliation against the First Amendment, right? Correct. Okay, because there's no such thing that I understand as just retaliation as a constitutional challenge, unless I'm missing something. No, I absolutely agree, Your Honor. Retaliation as a constitutional challenge doesn't exist. Ultimately, it has to be couched in terms of some sort of First Amendment claim, which it wasn't here. But they seem to think that there is a retaliation-based equal protection claim. Do you understand what it is? I believe, Your Honor, that they are referring to that statement as a component of the malice argument regarding selective enforcement. Aren't they just saying it's access to the courts? Correct. Or some sort of right. Which they say is fundamental constitutional right. That is the other argument, Your Honor. So then that – if that's – if you agree with that, then you're treating them – they did plead a First Amendment claim. They just didn't characterize it as such, and the fact that they didn't use the right nomenclature, who cares? No, Your Honor, because I think still there would be no retaliation in this particular case. Okay. I understand. But then that's a different point than there's no such claim. So now you're treating it as if there is a retaliation against their First Amendment right to petition because of this statement, and then you're just saying on the merits it fails because it's not plausibly pled because it doesn't show all the elements? No, Your Honor. We treated it as part of the selective enforcement claim, which is how they pleaded it. Correct. So then you're saying there is no right to petition claim before us. Correct. There is no right to petition claim. And the district court proceeded on that same understanding? That is my understanding as well, Your Honor. Yes. And was it argued to the district court that they were bringing a right to petition claim? No, Your Honor. I believe that it was actually addressed in the hearing.  So what is the selective prosecution claim? I'm just not fully grasping that. Is that this ground for selective prosecution was the right to petition, and that's an impermissible ground? Correct, Your Honor. I believe that they have couched it in terms of that malice argument or whether or not there was some sort of malice or bad faith or some sort of intent to punish the exercise of constitutional rights here, which ultimately, again, is not on this record before you. Instead, what we have is this statement, a lawsuit filed, and then again, no retaliation, no ban, nothing. What you actually have is a robust and full outdoor dining program for the remainder of summer 2022, one that was actually extended through the end of September 2022. In 2023, what you have is, in fact, a change in policy because there were other considerations for the city, specifically the imminent closure of the Sumner Tunnel coupled with the North Washington Bridge construction project. But you have to decide whether the complaint plausibly alleges that it was retaliatory versus a legitimate change in policy.  And you say the complaint includes all of this, so they don't plausibly allege just the first part. Correct, Your Honor, particularly when coupled with the fact that in order to make out some sort of malice claim or selective enforcement claim, which is a very high bar, you have to have some sort of maliciously orchestrated campaign, which is absolutely not present on the record before this Court. The other thing that is present on the record before this Court is that the city very much had a rational basis for its policies in 2022, in 2023 and 2024. Each one of the city's policies was rationally related to the legitimate government interest of preserving residential quality of life in a small neighborhood with the highest concentration of restaurants in the city. That's also home to 11,000 Bostonians. I guess in that context, am I right that at the time that statement's made, they're still charging the fee? Correct. That was before the start of the 2022 outdoor dining season. What is the theory of the city that, well, we're still charging the fee, and if we're entitled to still charge the fee because we're not singling anybody out, we're just appropriately identifying a neighborhood that has a different circumstance, and therefore we can charge the fee, the fact that we say, well, if they're going to challenge the fee, then maybe we just won't have the program. Since we're entitled to have the program with the fee, why would we continue the program without the fee? That doesn't show malice. That just shows how we would respond if we can't charge the fee. Is that the idea? That's correct, Your Honor. And ultimately, it's not dissimilar from what the district court found regarding the mayor's statement. But if that's right, what's the difference between that and simply saying, well, basically you can't charge the fee, you can't challenge the fee in court? The difference between, I'm sorry, Your Honor, the difference is... We won't shut you down if you challenge the fee in court. Is that just a version of saying, then, you just can't challenge us in court? I think, Your Honor, that it is different because here there's no allegation that that was said directly to them. And in fact, I think there's a difference in the understanding of whether or not someone's saying, this is only how far we can go with this particular program, which is ultimately what the district court found regarding the mayor's statement of, if a person with a physical mask doesn't ultimately get to a yes on this outdoor dining program, and this is in the letter on page A224, I'm prepared to rescind the program. But ultimately, that does not show malice. That shows we have to put on a program, and if we can't put it on the way that is acceptable, ultimately, we would need to be able to only go so far. Ultimately, Your Honors, I see my time has expired, so I will rest on the papers. And we'd ask that you affirm the district court's ruling in this case. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case. I need to request rebuttal. I did not. This is reserved. No. Thirty seconds, Your Honors, if I may. You may. Go ahead. Thank you. Three very brief points. Thirty seconds. All of the rational bases in the complaint were alleged as pretextual. If they are pretextual, if they are adequately pled, plausibly pretextual, that should be sufficient to defeat any rational basis. The case that I think Your Honors were looking for is Rubinovitz, the First Circuit, this Court, 60 F. 3rd 90, several other cases from other circuits and from this Court at footnote 3. Thank you. Thank you. That concludes arguments in this case.